**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| ERIC POYNTER, | : | Case No. 1:20-cv-247 |
| | : | |
| Plaintiff, | : | Judge Timothy S. Black |
| | : | |
| vs. | : | |
| | : | |
| RUSHMORE LOAN MANAGEMENT | : | |
| SERVICES LLC, *et al.*, | : | |
| | : | |
| Defendant. | : | |

**ORDER GRANTING SUMMARY JUDGMENT TO DEFENDANTS**

This civil case is before the Court on a motion for summary judgment by

Defendants Rushmore Loan Management Services LLC ("Rushmore") and RMAC Trust,

Series 2016-CTT ("RMAC," collectively with Rushmore, "Defendants") (Doc. 33), and

the parties' responsive memoranda, (Docs. 38 and 43).  Also before the Court is the

parties' joint motion to continue trial pending this ruling.  (Doc. 44).

## I.    BACKGROUND

This is the third time Plaintiff Eric Poynter has sued the companies that own and

service his mortgage.  Defendants in this case are RMAC, who currently owns his

mortgage, and Rushmore who currently services it.  Plaintiff alleges that Defendants

failed to properly apply his mortgage payments, failed to respond to his Notice of Errors,

and that misrepresentations and omissions in periodic mortgage statements they sent

Plaintiff violated the Real Estate Settlement Procedures Act ("RESPA"), the Fair Debt

Collection Practices Act ("FDCPA") and the Truth in Lending Act ("TILA").

Plaintiff alleged similar claims in his two prior lawsuits.  Both of those cases settled, but facts predating them remain relevant to this case.  The gist, that Plaintiff does not dispute, is that he made a series of partial payments that left him behind on his mortgage for more than a year.  On paper,[1] the key fact Plaintiff disputes is the precise dollar amount of his delinquency.  Deciding whether that represents a genuine dispute of material fact is not as simple as it sounds.  Getting there requires the Court to follow a convoluted trail back to when Plaintiff first fell behind on his mortgage.

In February 2006, Plaintiff secured a loan for $105,535.00 against his property at 943 Hamilton Scipio Road, Okeana, Ohio 45053 ("the property").  (Doc. 33-1, ¶¶ 1-2). The terms of the loan required Plaintiff to make a full monthly payment on the first day of each month.  *Id.* at ¶ 3.  If he failed to make a full monthly payment by the 15th day of the month, he would be charged 4% of the outstanding amount as a late fee.  *Id.*  In addition to his payments towards principal and interest, Plaintiff was required to escrow money for taxes and insurance.  *Id.* at ¶ 4.  Finally, any partial payments Plaintiff made were held in suspense, *i.e.*, they were not applied to his loan expenses until he paid the full value of one monthly payment.  Plaintiff does not dispute this.  (Doc. 38-1, ¶¶ 1-4).

In April 2018, Plaintiff executed a Loan Modification Agreement ("LMA").  The LMA identified the "New Principal Balance" as $140,061.17 and revised Plaintiff's

---

[1] Plaintiff testified at his deposition: "I have never gotten behind on the mortgage payments." (Doc. 33-2 at 27:20-21).  His declaration, however, admits to making non-conforming payments for five months.  (Doc. 38-2 at ¶¶4, 8).  The difference in these positions perhaps reveals Plaintiff's confusion about suspense accounts and may, more than anything else in the complaint, form the true basis for the injustice Plaintiff perceives.

2

monthly payment schedule, (Doc. 35-3, at 2), but otherwise did not modify the rights or obligations under the original loan agreement. (Doc. 33-1, ¶¶ 5-6). This too is undisputed. (Doc. 38-1, ¶¶ 5-6). Attorney Brian Flick, Plaintiff's counsel in this matter, notarized the agreement. *Id.*

On September 10, 2018, Selene notified Plaintiff that, starting October 1, 2018, Plaintiff's monthly payment would increase from $788.11 to $994.30 due to an escrow shortage. *Id.* at ¶ 8. Plaintiff does not dispute that this increase was legitimate.

On September 14, 2018, Plaintiff sued then-owner of his loan, OWS REMIC Trust 2013-1 ("OWS") and then-servicer, Selene Finance LP ("Selene"), in this Court (the "2018 Litigation"). (Doc. 33-1, ¶ 7); *Poynter v. Selene Finance L.P., et al.*, Case No. 18-cv-650. Among other claims, Plaintiff's November 7, 2018 amended complaint alleged defects in "Selene['s] Servicing" of Plaintiff's loan from "August 1, 2017 to the present." Amended Complaint at 9, *Poynter v. Selene Finance L.P., et al.*, Case No. 18-cv-650 (S.D. Ohio Nov. 7, 2018), ECF No. 17. These defects included a claim that Selene "failed to properly apply all payments remitted" and thus, as in this case, had violated RESPA, TILA, and the FDCPA. *Id.* at 17-23, 25.

As of September 26, 2018, Plaintiff was current on his mortgage. A mortgage statement from that date reflected no past due amount and nothing held in suspense. (Doc. 38-2 at 6). The statement further reflected the new monthly payment amount of $994.30 due October 1, 2018. *Id.* But come October 1, Plaintiff did not pay $994.30. Records from Selene show an October 8, 2018, payment of $789.00—the amount of his monthly payments prior to the increase. (Doc. 38-3 at 27). Plaintiff's bank statement

reflects the same amount paid via Check 168.  (Doc. 38-2 at 9).  Because $798.00 did not

represent a full payment, Selene held the money in suspense.  (Doc. 38-3 at 27; Doc. 38-2

at 21).

What happened in November 2018 is, at best, hazy.  Plaintiff's bank records show

that Check 169 for $789.00 cleared his account on November 16, 2018.  (Doc. 38-2 at

10).  A mortgage statement Selene sent to Plaintiff via the Dann Law Firm (Plaintiff's

counsel in the 2018 Litigation and this litigation) on November 20, 2018 does not reflect

a payment of $789.00.  (Doc. 38-2 at 21).  Instead, the Selene mortgage statement shows

that, on October 26, 2018, Selene applied $789.00, that was already held in suspense, to

Plaintiff's principal, interest, and escrow apparently in full satisfaction of Plaintiff's

October 2018 payment (notwithstanding that the October payment should have been

$994.30).  (Doc. 38-2 at 21).  Thus, Plaintiff's November 20, 2018, mortgage statement

reported that $2,018.04 was due on December 1, 2018, which represented the past due

amount for November ($994.30), plus a late fee ($29.44), and the upcoming payment for

December ($994.30).  *Id.*

On January 30, 2019, Plaintiff settled the 2018 Litigation against Selene, OWS,

and a prior servicer of his mortgage.  Notice of Settlement, *Poynter*, Case No. 18-cv-650,

ECF No. 20.  Parties have not made that settlement agreement a part of the record here.

Plaintiff's check receipts reflect that he continued to send checks for $789.00 on

each of November 27, 2018, December 27, 2018, and January 27, 2019.  (Doc. 38-1 at

¶ 16).  And Plaintiff's loan account history reflects that he paid $789.00 in February too.

(Doc. 33-3 at DEFENDANTS00001792; Doc. 38-2 at ¶ 4).  With each partial payment,

he fell further behind.  A February 12, 2019 mortgage statement identified an unapplied balance of $378.40 and a past due amount of $1,988.60, indicating Plaintiff was fully two months delinquent.  (Doc. 38-2 at 24).  In the center of the statement, a box titled "Important Messages" reminded, "Any partial payments that you make are not applied to your mortgage but instead are held in an unapplied account on your mortgage."  *Id.*

By the time Plaintiff started making correct payments in March 2019, his account was already well past due.  *Id.*  As a result, the $996.00 he paid on March 4, 2019, (Doc. 38-2 at 13) was combined with the $378.40 suspense balance and applied to satisfy Plaintiff's January 2019 payment.  (Doc. 33-3 at DEFENDANTS00001792).  Likewise, the $996.00 he paid on April 2, 2019, was applied to a payment due February 1, 2019. *Id.*  And Plaintiff's payments of $996.00 in May and June were also applied to past due payments from prior months.  *Id.*

Starting on July 1, 2019, Plaintiff's monthly payments decreased from $994.30 to $929.55.  (Doc. 33-1 at ¶ 10).  Again, Plaintiff continued paying at the old rate.  (Doc. 38-2 at 17).  Plaintiff's bank records reflect that a payment for $996.00 processed on July 5, 2019.  (Doc. 38-1)*, and* that money, combined with unapplied suspense funds from the prior month, was applied to Plaintiff's May 2019 payment.  (Doc. 33-3 at DEFENDANTS 00001793).  Plaintiff paid the same amount on August 5, 2019 (Doc. 38-2 at 18) which, combined with unapplied suspense funds, satisfied his June 2019 payment, (Doc. 33-3 at DEFENDANTS00001793)*.*

On July 2, 2019, Plaintiff filed his second lawsuit again Selene and OWS. *Poynter v. Selene Finance L.P., et al.*, Case No. 19-cv-510 (S.D. Ohio Jul. 2, 2019) ("the

5

2019 Litigation").  Like the 2018 Litigation, Plaintiff alleged that Selene committed a series of errors in servicing his loan, including by miscalculating his past due balances, that led to violations of the FDCPA, TILA, and RESPA.  *Id.* at ECF No. 1.

On August 22, 2019, Selene sent a letter to Plaintiff informing him that, effective September 10, 2019, Defendant Rushmore would take over servicing of Plaintiff's loan. (Doc. 33-1 at ¶ 12).  Plaintiff does not dispute that he received this document.  (Doc 38-1 at ¶ 12; Doc. 33-2 at 38:24).

On September 9, 2019, Plaintiff received a document from Rushmore titled "Notice of Sale of Ownership of Mortgage Loan."  (Doc. 35-8).  Plaintiff does not meaningfully dispute that he received this document on this day.  (Doc. 38-1 at ¶ 14). The document informed Plaintiff that his loan had been sold to U.S. Bank National Association as trustee for Defendant RMAC.  (Doc. 35-9).

On September 10, 2019, Selene's last day as Plaintiff's loan servicer, Plaintiff's Check 109 for $996.00 cleared his bank account.  (Doc. 38-2 at 19).  Just as Selene had done for several preceding months, the loan servicer combined Plaintiff's payment with unapplied suspense funds to satisfy one full past due payment.  (Doc. 33-3 at DEFENDANTS00001794).  Plaintiff does not dispute this.  (Doc. 38-1 at ¶ 17).  Plaintiff disputes only that the past due payment from July 1, 2019 was the correct one for Check 109 to complete.  *Id.*  Selene's final periodic mortgage statement dated September 10, 2019 ("Selene's statement"), reflected that:

- Plaintiff's account was past due $1,859.10 (the sum of his past due August and September 2019 payments of $929.55 each);

- the next monthly payment of $929.55 was due on October 1, 2019;

- Plaintiff owed $154.41 in fees; and

- Selene held $455.05 in suspense.

(Doc. 38-3 at 20).

On September 20, 2019, Rushmore sent its first period mortgage statement

("Rushmore's statement") to Plaintiff.  (Doc. 38-3 at 6).  The statement reflected that:

- Plaintiff's account was past due $1,859.10;

- the next monthly payment of $929.55 was due on October 1, 2019;

- Plaintiff owed $154.41 which comprised:

  - $114.47 in Recoverable Advances, and

  - $39.94 in late fees; and

- Rushmore held $455.05 in suspense as a "Partial Payment (Unapplied)"

*Id.*  The line item representing "unapplied" funds of $455.05 appeared directly beneath

the line item labeled "Total Amount Due," indicating, in the familiar arithmetic format,

that the "unapplied" funds should be subtracted from the "Total Amount Due."  *Id.*  None

of this is disputed.  (Doc. 38-1 ¶¶ 20(a)-(d)).  Plaintiff disputes only that the total amount

demanded in Rushmore's statement was $2,488.01.  (Doc. 38-1 at ¶ 21).

Thus, on October 1, 2019, one year after Plaintiff's first non-conforming check

triggered a cascade of late payments, Plaintiff was two months behind on his mortgage

payments and owed $2,488.01.  Plaintiff disputes this conclusion, but not any of the

underlying math recounted above.  (Doc. 38-1 at ¶¶ 18, 19, 20(b)).  Nor does Plaintiff

dispute that the suspense total after the September 10 check was $455.05 (which it would not have been if Plaintiff were only one month behind).  *Id.*  This was the state of Plaintiff's loan when ownership transferred from OWS to RMAC, (Doc. 33-1 at ¶ 13), and forms the foundation for three, crucial, overlapping events in late September and October 2019.

On October 9, Plaintiff sent Rushmore a Notice of Errors ("NOE") through his counsel (again, the Dann Law Firm).  (Doc. 38-1 at ¶ 28).  The NOE asserted two errors:

- *First,* that the total amount due was $2,488.01, as reflected on Selene's statement, *not* $2,828.59 as reflected on Rushmore's.  (Doc. 38-1 at ¶ 30).  Plaintiff and his counsel, understood this to mean that Rushmore had "added an additional $341.08 in balances owed, despite the Borrower remitting the September 1, 2019 Mortgage Payment to Selene in a timely manner, and Selene processing said payment on September 10, 2019."  *Id.*

- *Second,* that the recoverable advance values presented on both the September mortgage statements from Selene (Doc. 38-3 at 20) and Rushmore (Doc. 38-3 at 6) were unjustified because Plaintiff had made his September 2019 payment.  *Id.*

Just before sending the NOE, Plaintiff wrote two checks numbered 110 and 111.  Check 110, dated September 27, 2019, was for $996 (*i.e.*, the pre-July monthly payment amount).  (Doc. 38-1 at ¶ 22(a)).  Check 111, dated September 29, 2019, was for $929.55 (the correct amount of a monthly payment).  *Id.* at ¶ 22(b).  Plaintiff's bank records show that Check 111 was negotiated to Rushmore on October 16, 2019.  (Doc. 35-17 at 2).  But

no records show that Check 110 was ever sent, received, or negotiated.  (Doc, 38-1 at

¶ 25).  Defendants' position is that Plaintiff never sent Check 110.  Plaintiff's position is

that he sent Check 110, but that Defendant Rushmore never applied it.  (Doc. 38-1 at

¶ 24).  The parties do not dispute that Plaintiff always sent his mortgage payments via

certified mail for the past nine years and that he consistently saved his certified mail

receipts.  *Id.* at ¶ 26.  Nor do they dispute that Plaintiff produced no certified mail receipt

corresponding to Check 110.  *Id.*  Nor do they dispute that, if Plaintiff *had* sent Check

110, it would have bounced because Plaintiff did not have enough money in his (only)

bank account for both Checks 110 *and* 111.  *Id.*[2]

On October 15, 2019, Plaintiff executed an agreement settling the 2019 Litigation

against Selene and OWS.  (Doc. 42-2 at 6).  That agreement terminated the litigation and

included the following release:

> Upon the execution of this Agreement, and without need for
> further documentation, Poynter … hereby releases and forever
> discharges the Defendants, **as well any and all of their …
> successors, … as well as the current and prior owner(s)
> and/or holder(s) of the Loan, … (collectively, the "Released
> Parties"), of and from any and all allegations, claims**,
> charges, liabilities, demands, actions, causes of action,
> counterclaims, third-party claims, defenses, setoffs, damages,
> costs, expenses, and/or compensation, of any kind whatsoever,
> whether known or unknown; that Poynter has or at any time
> prior to the execution of this Agreement had and relating to the
> Property and Loan, including without limitation those resulting
> directly or indirectly from or arising in any way out of the Loan
> and/or the Property, the claims made or which could have been
> made by Poynter **arising from the origination or servicing of
> the Loan, as well as any that were or could have been raised**

---

[2] The legal significance of this point has evaporated in the final summary judgment briefing, but,
at one point, this factual dispute was a key feature of Plaintiff's theory of liability.

> **in the Litigation**, or any other matters relating thereto. Poynter realizes that he may sustain unknown or unforeseen losses; costs, expenses, liabilities, claims, injuries, damages and consequences thereof which may be at this time unknown, unrecognized and not contemplated by him. By executing this Agreement, it is the full intent of the Parties that Poynter releases the Re1eased Parties of and from any and all liability for such unknown and/or unforeseen losses, costs, expenses, liabilities, claims, damages and consequences thereof including those not known, recognized or contemplated relating to the Property, Note, or Security Instrument, any servicing act or omission thereof as well and the Loan (collectively, the "Released Matters"). **A portion, of the consideration herein is for the release of such unknown or future claims or damages against Selene and OWS.**

(Doc. 42-2 at 3) (emphasis supplied).

On October 24, 2019, 15 days after Plaintiff sent the NOE, Rushmore responded explaining, in essence, how Plaintiff's nonconforming payments had caused his account to be two months delinquent and, therefore, the late fees were appropriately assessed because Plaintiff's payments were properly applied to past due payments.  (Doc. 38-1 at ¶ 36).  The response further demonstrated that Plaintiff owed the same amount on Rushmore's statement and Selene's, but the numbers were broken out differently.  *Id.* The response concluded that no errors had occurred and provided the documents, including Plaintiff's account history under Selene, that Rushmore had relied on to reach that conclusion.  *Id.*

On March 30, 2020, Plaintiff filed this suit alleging breach of contract (Count I), a failure to respond to Plaintiffs NOE in violation of RESPA regulations (Count II), violations of the FDCPA based on inaccurate periodic statements (Count III), a failure to send compliant periodic statements in violation of TILA regulations (Count IV), and a

failure to notify Plaintiff about the sale of his loan in violation of TILA (Count V).

Defendants now seek summary judgment on all counts.

## II.    STANDARD OF REVIEW

A motion for summary judgment should be granted if the evidence submitted to the Court demonstrates that there is no genuine issue as to any material fact, and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).  The moving party has the burden of showing the absence of genuine disputes over facts which, under the substantive law governing the issue, might affect the outcome of the action.  *Celotex*, 477 U.S. at 323.  All facts and inferences must be construed in a light most favorable to the party opposing the motion.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  However, party opposing a motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . .  must set forth specific facts showing that there is a genuine issue for trial."  *Anderson*, 477 U.S. at 248.

## III.    ANALYSIS

### A.    **Breach of Contract (Count I)**

Plaintiff alleges that Defendants breached the mortgage agreement and the LMA by failing to apply Plaintiff's monthly mortgage payments in accordance with those agreements.  Specifically, Plaintiff points to the payments due October 1, 2019 through February 1, 2020 as misapplied because they were based on a miscalculation of Plaintiff's existing delinquency when Rushmore took over servicing of the loan from

Selene.  In support of their motion, Defendants respond simply that they did not misapply any payments, and that each of Rushmore's mortgage statements from when it adopted Plaintiff's mortgage demonstrate that payments were applied in accordance with the mortgage agreement and the LMA.  That response overlooks the possibility Rushmore applied Plaintiff's payments based on an incorrect overdue balance that it adopted from Selene.  But even that possibility does not raise a genuine dispute of material fact that can defeat summary judgement on Count I.  Plaintiff has purported to withdraw this count, and therefore has not raised "specific facts showing that" Rushmore's payment calculations may have been based on an earlier misapplication of Plaintiff's mortgage payments.  *Anderson*, 477 U.S. at 248.

Furthermore, Defendants are correct that the settlement agreement in the 2019 Litigation forecloses any claims based on a misapplication of Plaintiff's mortgage payments before October 15, 2019.  The releases in that agreement cover at least Selene's history of servicing the loan which is when Plaintiff's delinquency would have been allegedly miscalculated.  Courts are bound to enforce settlement agreements in accordance with their terms just as they would any other contract.  *Aho v. Cleveland-Cliffs, Inc.*, 219 Fed. App'x, 419, 422 (6th Cir. 2007).  Here, the parties expressly released Selene's successors and assigns, which would include RMAC and Rushmore.  Indeed, Rushmore had already taken over servicing the loan, and RMAC had already bought it, by the time the agreement was finalized.  The parties may well have conceded that that Selene misapplied certain loan payments and compensated Plaintiff accordingly.

The Court will not upset the bargain parties have already struck to resolve this claim, nor has Plaintiff asked the Court to do so.  Summary judgment on Count I is therefore **GRANTED.**

B.     **Violation of RESPA (Count II)**

In Count II, Plaintiff alleges that Rushmore failed to respond to Plaintiff's October 9, 2019 Notice of Errors in compliance with RESPA and its implementing regulations, commonly called "Regulation X."  12 C.F.R. § 1024.35.  In broad terms, RESPA provides that a borrower may submit a "Qualified Written Request" or "QWR" to their loan servicer requesting "information relating to the servicing of such loan."  12 U.S.C. § 2605(e)(1)(A).  A QWR letter must identify the loan and include "a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error." 12 U.S.C. § 2605(e)(1)(B).  RESPA further requires that a servicer acknowledge such an inquiry within five business days of receiving the request (12 U.S.C. § 2605 (e)(1)(A)), and substantively respond within 30 business days.  12 U.S.C. § 2605(e)(2). Regulation X builds on these requirements.  A QWR that asserts an "error relating to the servicing of a mortgage loan" is called a "Notice of Error" or "NOE."  12 C.F.R. § 1024.35(a).  Under Regulation X, a loan servicer's response must either correct the "error or errors identified by the borrower," or conduct "a reasonable investigation" and a provide written notice that no error has occurred with reasons for that determination, and a statement about the borrower's right to request the information on which the loan servicer made the decision.  12 C.F.R. § 1024.35(e)(1).  The servicer may be required to correct "[d]ifferent or additional" errors *if* "during a reasonable investigation of a notice

of error, a servicer concludes that errors occurred other than, or in addition to, the error or errors alleged by the borrower." *Id.* at (e)(ii).

Courts remain split on whether a private right of action exists under Regulation X, and the Sixth Circuit has not yet weighed in. *See Hazelwood v. Bayview Loan Servicing, LLC*, No. 1:20-CV-726, 2021 WL 664059, at *6 (S.D. Ohio Feb. 19, 2021), report and recommendation adopted, No. 1:20CV726, 2021 WL 1019936 (S.D. Ohio Mar. 17, 2021) (surveying circuits).  The parties here are content to proceed as though that right is established.  The Court will too.  In general, summary judgement is appropriate where a loan servicer has complied with the requirements of RESPA and Regulation X in responding to a NOE.  *See Aazami v. Wells Fargo Bank, N.A.*, No. 3:17-CV-01564-BR, 2019 WL 281286, at *14 (D. Or. Jan. 22, 2019).  That inquiry need not be more complicated than looking at the mortgage servicer's response and seeing if it fits the express terms of Regulation X in responding the errors alleged in Plaintiff's NOE.  *See id.*; *Boedicker v. Rushmore Loan Mgmt. Servs., LLC*, No. 16-2798-JTM, 2018 WL 828039, at *3 (D. Kan. Feb. 12, 2018) (granting defendant summary judgement on plaintiff's RESPA claim where "the uncontroverted facts show defendant complied with the regulation by timely responding to plaintiffs' questions and providing the explanation and documentation requested.").  The key requirement is that the loan servicer conduct a "reasonable investigation," meaning, at minimum, a "search or inquiry … to test the validity of [the borrower's] complaints." *Marais v. Chase Home Fin., LLC*, 24 F. Supp. 3d 712, 724 (S.D. Ohio 2014).  Merely providing documents and a statement that there are no errors is not enough.  *Id.*

14

The parties agree that Plaintiff's October 9, 2019 letter was a NOE within the meaning Regulation X.  Indeed, it could hardly be clearer in specifying the alleged errors Plaintiff wanted Rushmore to investigate.  In bolded, underlined text, labeled 1 and 2, the NOE alleged two errors.  (Doc. 35-13 at 2).  The first alleged error was that "Rushmore assessed an additional $341.08 in balances owed, despite the Borrower remitting the September 1, 2019 Mortgage Payment to Selene in a timely manner, and Selene processing said payment on September 10, 2019." *Id.*  Plaintiff alleged that this error violated 12 C.F.R. 1025.35(b)(2) which is the "[f]ailure to apply an accepted payment to principal, interest, escrow, or other charges under the terms of the mortgage loan and applicable law."

The second alleged error was that "Rushmore's statement of a recoverable advance of $114.47 [wa]s without merit," because "Selene did not apply any of the payment tendered on September 10, 2019 to outstanding charges owed." *Id.*  Plaintiff alleged this error violated 12 C.F.R. § 1024.35(b)(5) which is "[i]mposition of a fee or charge that the servicer lacks a reasonable basis to impose upon the borrower."

Thus, both perceived errors stemmed directly from Plaintiff's belief that Selene failed to apply Plaintiff's September 10, 2019 payment.  Plaintiff's complaint reinforces that these were the only two errors he asked Rushmore to investigate.  (Doc. 1 at ¶ 68(a)-(b)).  The Complaint is unequivocal that both errors were based on the "October 1, 2019 Periodic Billing Statement sent by Selene which … did not reflect any credits for the payment tendered on September 10, 2019." *Id.*

Rushmore responded to the NOE on October 24, 2019.  (Doc. 33-3).  There is no dispute the response was timely.  Plaintiff alleges only that Rushmore failed to "conduct a reasonable investigation into all errors asserted in [Plaintiff's NOE]."  (Doc. 1 at ¶ 71).  That allegation is unsupportable.  Rushmore's response fully addressed both "errors" that Plaintiff presented.  Those perceived errors amounted to confusion about basic arithmetic.  Even a cursory investigation would have revealed that the specific errors alleged in the NOE did not occur.  But Rushmore's investigation was more than cursory.

In response to the first perceived error, Rushmore explained that it did not "add[] an additional $341.08 in balances owed."  (Doc. 33-3 at 80-81).  The $341 difference between the number in bold typeface on the Selene statement and the number in bold typeface on the Rushmore statement represented the amount Plaintiff had already paid into a suspense account ($455.05) minus the amount he owed as a recoverable advance ($114.47).  The discrepancy was merely a difference in presentation: "Rushmore does not include the corporate advances into the total monthly amount due," whereas Selene did.  And "the suspense balance of $455.05 [was] not deducted from the total amount due" on Rushmore's statement, whereas it was represented that way on Selene's.  *Id.*

Responding to the second perceived error, Rushmore examined its predecessor's records from prior months and explained that Selene did indeed apply Plaintiff's September 10, 2019 payment, however it was applied to the outstanding balance from July 2019 because plaintiff was (and had been) two months delinquent on his loan.  *Id*.  Thus, the difference in recoverable advances identified on Selene's statement versus Rushmore's statement was, again, just a difference in presentation.  Selene presented

16

recoverable advances and late fees as one combined line item of $154.41.  (Doc. 38-3 at 20).  Rushmore presented recoverable advances and late fees as separate line items *that added up to* $154.41.  (Doc. 38-3 at 6).

Rushmore conducted a reasonable investigation, and then, in its response letter, walked Plaintiff through the numbers.  It also provided the documents that Rushmore relied on to conclude there was no error and provided a contact person for further questions.  (Doc. 33-3 at 80-81).  That is all Regulation X requires in responding to a NOE.  *Marais*, 24 F. Supp. 3d at 724.

Plaintiff argues that Rushmore failed to "perform[] a full account review."  (Doc 38 at 8).  But Rushmore was not required to do that.  Nothing in RESPA or Regulation X gives borrowers authority to dictate the parameters of a lender's investigation.  And, in this case, investigating the errors Plaintiff alleged in his NOE did not require a "full account review."  To "test the validity" of Plaintiff's alleged errors, Rushmore only had to compare the Selene statement to the Rushmore statement and add up the numbers. *Marais*, 24 F. Supp. 3d at 724.  Rushmore went a step beyond that and reviewed Selene's recent service history, which only further confirmed (1) that Selene had applied Plaintiff's September 2019 payment, and (2) that the numbers in the two servicers' statements, though presented differently, were the same.  This is not like the situation in *Baker v. Nationstar Mortgage*, No. 2:15-CV-2917, 2018 WL 3496383, at *6 (S.D. Ohio July 20, 2018).  Plaintiff cites that case for the proposition that "§ 2605(e)(2)(B)-(C) imposes a substantive obligation on mortgage loan servicers to conduct a reasonably thorough examination before responding to a borrower's qualified written request."

*Baker*, 2018 WL 3496383, at *6 (S.D. Ohio July 20, 2018), vacated, No. 2:15-CV-2917, 2018 WL 6981208 (S.D. Ohio Sept. 4, 2018). In that case, the loan servicer defendant merely provided the borrower with her loan history, and asserted, without reasoning, that there was no error. *Id.* Rushmore, in contrast, did the math. Its response explains, in verifiable terms, how Selene applied Plaintiff's September 2019 payment, and why the numbers appear different between the Selene and Rushmore statements. Rushmore's investigation was therefore reasonable.

Plaintiff raises a new argument in his response to the summary judgement motion. For the first time in this litigation, Plaintiff alleges that Selene made an error in applying a *November 2018* payment, and that Rushmore's failure to uncover that error indicates a failure to respond to the October 2019 NOE. Even assuming, as the Court must, that there was an error in the application of Plaintiff's November 2018 payment, that was not the error Plaintiff's NOE asked Rushmore to investigate. The NOE asked Rushmore to investigate discrepancies between Selene's September 2019 mortgage statement and Rushmore's that were allegedly caused when Selene misapplied Plaintiff's *September 2019* payment. Regulation X only requires servicers to correct errors "other than, or in addition to, the error or errors alleged by the borrower" if they are discovered "*during a reasonable investigation of a notice of error.*" 12 C.F.R. § 1024.35(e)(1)(ii) (emphasis supplied). Rushmore did not need to go back nearly a year to conduct a reasonable investigation of errors that Plaintiff accused Selene of making in September 2019. RESPA expressly does not require servicers to trawl through their loan histories for errors that borrowers have not alleged. *Id.* at § 1024.35(g)(2).

This argument is not well-taken.  If Plaintiff wanted Rushmore to address a perceived error from November 2018, he should have said so in the NOE.[3]  When Plaintiff received the September Rushmore statement, he was still actively litigating against Selene.  By mid-September, both Selene and OWS had filed answers and Plaintiff was entitled to discovery.  He had every opportunity to discover and raise an erroneous November 2018 payment then.  Indeed, the Court cannot be sure he did not.  Plaintiff might well have elected to raise the error in settlement negotiations with Selene and received compensated for it when he settled.  In any event, Plaintiff has certainly released any claim that might spawn from a misapplied November 2018 payment.  Plaintiff initiated and settled two lawsuits against Selene between November 2018 and his October 2019 NOE.  In the later suit, Plaintiff released Selene and its successors and assigns from all claims related to Selene's servicing of Plaintiff's mortgage through October 15, 2019. (Doc. 38-1 at ¶¶ 31-34).  That includes a servicing error Selene may have made in November 2018.  Plaintiff does not dispute that.  *Id.*

Rushmore satisfied its obligations under RESPA and Regulation X in responding to Plaintiff's NOE, and Plaintiff has not raised any genuine dispute of facts material to that conclusion.  Because Defendants are not liable under RESPA, the Court need not reach their damages arguments.  Summary judgement on Count II is **GRANTED**.

C.     **Violation of FDCPA (Count III)**

Plaintiff next asserts that Defendants violated the FDCPA.  15 U.S.C. §§ 1692e,

---

[3] Likewise, if Plaintiff had wanted the Court to consider a claim based on Selene's failure to apply a November 2018 payment, he should have said so in his complaint

1692f.  The FDCPA prohibits "debt collectors" from collecting on a debt by using false, deceptive, or misleading statements, § 1692e, or otherwise unfair practices, §1692f.  To win a claim under the FDCPA, a plaintiff must prove she (1) is a "consumer" as defined in 15 U.S.C. § 1692a(3); (2) that the "debt" arises out of a transaction which is "primarily for personal, family or household purposes"; (3) defendant is a "debt collector" as defined in the FDCPA; and (4) defendant has violated one of the enumerated prohibitions in the FDCPA.  *Estep v. Manley Deas Kochalski, LLC*, 942 F. Supp. 2d 758, 766 (S.D. Ohio 2013), *aff'd*, 552 F. App'x 502 (6th Cir. 2014).  There is no dispute that Plaintiff is a consumer whose loan is for personal purposes, and Defendants are debt collectors.

Defendants object only that they have not used any false, deceptive, misleading, or unfair practices because everything represented in their September 2019 mortgage statement was true, and therefore could not have been false, deceptive, misleading, or otherwise unfair in violation of 15 U.S.C. § 1692.  *See Dutton v. Wolhar*, 809 F. Supp. 1130, 1135 (D. Del. 1992); *Medina v. Pioneer Credit Recovery, Inc.*, No. 1:12-CV-382, 2013 WL 12109424, at *3 (W.D. Mich. Aug. 15, 2013).

Plaintiff's response is that the September 2019 mortgage statement was inaccurate because it misrepresented the true amount of his delinquency.  Plaintiff does not contest that he was behind on his mortgage payments for nearly a year because of a series of partial payments he made in 2018.  He argues only that Selene failed to apply a payment he made in November 2018 which caused him to appear *more* behind than he truly was by September 2019 when Selene transferred servicing responsibility to Rushmore.

In a normal case, whether Selene made an error applying Plaintiff's November 2018 payment—which then carried through to Rushmore's September 2019 statement— might be a triable issue of material fact. But here, the Court cannot consider it. Plaintiff released any claims against Selene for servicing errors that happened before October 15, 2019. (Doc. 42-2 at 3). Plaintiff's settlement agreement specifically released Selene, OWS, and their successors from "claims made or which could have been made by Poynter arising from the origination or servicing of the Loan, as well as any that were or could have been raised in the Litigation." *Id.* That release ineluctably encompasses the claim that Selene failed to properly apply a payment in November 2018. *Id.* The complaint in the 2018 Litigation even included allegations that Selene had misapplied payments that are nearly identical to the claim Plaintiff makes now. Amended Complaint at 9, *Poynter v. Selene Finance L.P., et al.*, Case No. 18-cv-650 (S.D. Ohio Nov. 7, 2018), ECF No. 17. If Selene did misapply a payment in November 2018, Plaintiff (and his counsel) [4] had every opportunity to include it in his then-pending lawsuit. Indeed, he was obligated to do so. *Gen. Med., P.C. v. Morning View Care Centers*, 477 F. Supp. 2d 858, 862 (S.D. Ohio 2006), *aff'd*, 253 F. App'x 586 (6th Cir. 2007) (observing that claim preclusion obligates parties to bring all related claims in a single lawsuit to avoid piecemeal litigation). But even if Plaintiff did not perceive an error in his November 2018 mortgage statement, he was still compensated for it. The agreement provided, "A portion of the consideration herein is for the release of such unknown or future claims or

---

[4] The November 20, 2018 mortgage statement Plaintiff now complains about was sent to Plaintiff's counsel at the Dann Law Firm.

damages against Selene and OWS." *Id.*  Plaintiff disputes none of this.  (Doc. 38-1 ¶ 31-34).

Releases encourage the private resolution of disputes which conserves judicial resources and provides finality for litigants.  *Scotts Co. LLC v. Liberty Mut. Ins. Co.*, 606 F. Supp. 2d 722, 734 (S.D. Ohio 2009).  Courts are bound to enforce them as they would any other contract.  *Id.*  Plaintiff offers no reason the Court should not enforce his existing agreement with Defendants (through their assignors).  Thus, Plaintiff is precluded from arguing that that Rushmore's September 2019 statement was inaccurate because it was based on Selene's error in November 2018.  Defendant has demonstrated that the September 2019 statement it sent Plaintiff was truthful and accurate, and Plaintiff has failed to establish any genuine dispute of material fact on that count.  Accordingly, Defendants' mortgage statements did not violate the FDCPA.  Summary judgment on Count II is **GRANTED.**

### D.    **Violation of TILA (Count IV)**

Plaintiff's fourth claim is that RMAC (the current owner of Plaintiff's loan) is liable under TILA for causing five inaccurate mortgage statements to be sent to Plaintiff from October 2019 through February 2020.  TILA's implementing regulations, commonly known as "Regulation Z," require loan servicers to issue periodic statements to their lenders containing information about the status of their loans including certain mandatory features.  12 C.F.R. § 1026.41.  Those mandatory features include amount due, explanation of amount due, past payment breakdown, transaction activity, partial payment information (*e.g.*, if a partial payment was placed in suspense), contact

information, general account information, and delinquency information. *Id.* at § 1026.41(d)(1)-(8). Nothing in Regulation Z requires loan servicers to *pre*-subtract an amount held in suspense from the total amount due (as Selene's statements did). *See id.* at § 1026.41(d)(5). Servicers are even allowed to present information about suspense funds "on a separate page" or "in a separate letter." *Id.* Appendix H-30 to Regulation Z presents several examples of conforming periodic statements. Sample Form H-30(B) depicts a hypothetical customer with $1,000 held in suspense. Just as in Rushmore's September 2019 statement, the suspense amount is *not* pre-subtracted from the "Total Amount Due."

Plaintiff does not dispute that Rushmore's periodic statements contained all the fields required under Regulation Z. (Doc. 38 at 15). Plaintiff only contests the accuracy of the information in those statements. That is not enough to sustain this count. 12 C.F.R. § 1026.42(d) does nothing to regulate the accuracy of information presented in a periodic statement. *Whitacre v. Nations Lending Corp.*, No. 5:19CV809, 2019 WL 3477262, at *5 (N.D. Ohio July 31, 2019). ("12 C.F.R. § 1026.41(d) requires the *inclusion* of this information in each periodic statement. Nothing in the regulatory language provides that § 1026.41(d) regulates the *accuracy* of this information."). In any case, as the Court has already recounted, the information *was* accurate. Plaintiff's new assertion, that all of Rushmore's periodic statements metastasized from a misapplied payment in November 2018, fails as a matter of law. Plaintiff released Defendants from claims arising from Selene's servicing of the mortgage prior to October 15, 2019. Plaintiff has never disputed that. Thus, Plaintiff has failed to produce any evidence

23

which creates a genuine issue of material fact on this count.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

Summary judgment is therefore **GRANTED** on Count IV.

E.     **Violations of 15 U.S.C. § 1641(g) and 12 C.F.R. § 1026.39 (Count V)**

Plaintiff has abandoned Count V.  That count alleged that RMAC, as assignee of Plaintiff's loan, failed to notify him of the sale of the loan from OWS to RMAC which violated 15 U.S.C. § 1641(g) and 12 C.F.R. § 1026.39.  RMAC did, however, notify Plaintiff of the sales within 30 days of it.  Defendants produced copies of that correspondence.  (Doc. 35-8).  And Plaintiff admitted to having a copy of at least the first page in his own records.  (Doc. 38-1 at 6).  He has not raised a genuine issue of material fact on this count.

Summary judgment is **GRANTED** as to Count V.

As the saying goes, reading is fundamental.  So too is arithmetic.  In this case, thousands of hours of litigation might have been spared if Plaintiff and his counsel had taken a moment to read his mortgage statements and pull out a calculator.  When the case began it was about discrepancies in the way two loan servicers chose to present the same information on their mortgage statements.  Once that cleared up, the case became about a phantom check that Plaintiff claimed he sent in September 2019.  When that proved to be impossible, Plaintiff fell back on an error that *may* have occurred nearly a year (and two discrete lawsuits) before Rushmore started servicing the loan.  But there again, reading skills might have saved him the trouble.  The claim underlying what remains of Plaintiffs case today is that Selene misapplied a payment in November 2018.  That claim is

foreclosed. Plaintiff signed it away for valuable consideration in October 2019, and the Court will not disturb that choice.

## IV. CONCLUSION

Based upon the foregoing, Defendants' motion for summary judgment (Doc. 33) is **GRANTED**. The parties' joint motion to continue trial pending this Order is therefore denied as moot. The Clerk shall enter judgment accordingly, whereupon this case is **TERMINATED** from the docket of this Court.

**IT IS SO ORDERED.**

Date: 3/15/2022

Timothy S. Black
United States District Judge